UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

VUGO, INC.,

                                  Plaintiff,

    - against -                                                           15 CV 8253 (RA)

CITY OF NEW YORK,

                                  Defendant.

------------------------------------------------------------------------x

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT PURSUANT TO LOCAL CIVIL RULE 56.1

Pursuant to Rule 56.1 of the Civil Rules of the Southern District of New York, Defendant, the City of New York, submits the following in response to Plaintiff's Statement Pursuant to Local Civil Rule 56.1 ("Plaintiff's Statement"):

1. The City of New York is a municipality of the State of New York. Through its Taxi and Limousine Commission, the City regulates taxi drivers, for-hire vehicle drivers and limousine drivers. The TLC is a non-mayoral agency, insulated by the City Charter from direct control of the mayor's office.

**DEFENDANT'S RESPONSE:** Defendant objects to paragraph "1" of Plaintiff's Statement in that it is not supported by admissible evidence as required under Local Civil Rule 56.1(d).

2. The TLC's rulemaking authority is derived from the City Charter and the Administrative Code of the City of New York.

**DEFENDANT'S RESPOSE:** Defendant objects to paragraph "2" of Plaintiff's Statement in that it is not supported by admissible evidence as required under Local Civil Rule 56.1(d).

3. On August 5, 1999, the TLC adopted the rules that are now codified as 35 RCNY § 59A-29(e) and 35 RCNY § 59B-29(e). (Snyder Ex. 2, transcript of August 5, 1999 public hearing of TLC, p. 29; Snyder Ex. 3, notice of final publication).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "3" of Plaintiff's Statement.

4. Sections 59A-29(e) and 59B-29(e) have been renumbered since their original passage, and there have been minor word revisions, but none of those changes made a substantive change to the rule adopted by the TLC on August 5, 1999. (Snyder Ex. 1, p. 13-14, 19-20).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "4" of Plaintiff's Statement.

5. 35 RCNY § 59A-29(e) states:

> Prohibited Advertising.
>
> An Owner must not display any advertising on the exterior or the interior of a For-Hire Vehicle unless the advertising has been authorized by the Commission and a License has been issued to the Owner following the provisions of the Administrative Code.

(Snyder Ex. 4)

**DEFENDANT'S RESPONSE:** Defendant disputes the assertions in paragraph "5" of Plaintiff's Statement because 35 RCNY § 59A-29(e) contains additional language. Paragraph "5" of Plaintiff's Statement quotes only from 35 RCNY § 59A-29(e)(1), and omits 35 RCNY § 59A-29(e)(2). This dispute, however, does not create a genuine issue of fact to be tried. Defendant does not dispute that Plaintiff accurately quoted from 35 RCNY § 59A-29(e)(1).

6. 35 RCNY § 59B-29(e) – which applies to For-hire Base Owners – contains a similar restriction:

> Prohibited Advertising.
>
> A Vehicle must not display advertising on the outside or the inside unless the Commission has authorized the advertising and has given the Vehicle Owner a permit specifying that the advertising complies with the Administrative Code.

(Snyder Ex. 5)

**DEFENDANT'S RESPONSE:** Defendant disputes the assertions in paragraph "6" of Plaintiff's Statement because 35 RCNY § 59B-29(e) contains additional language. Paragraph "6" of Plaintiff's Statement quotes only from 35 RCNY § 59B-29(e)(1), and omits 35 RCNY § 59B-29(e)(2). This dispute, however, does not create a genuine issue of fact to be tried. Defendant does not dispute that Plaintiff accurately quoted from 35 RCNY § 59B-29(e)(1).

7. Violation of either section subjects the vehicle owner to a $50 fine. (Snyder Ex. 4 and 5).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "7" of Plaintiff's Statement.

8. According to the City and its Statement of Basis and Purpose, "the rule is proposed to implement section 19-525 of the New York City administrative code and additionally to align the rules governing advertising in taxicabs with the rules governing advertising in [for-hire vehicles]." (Snyder Ex. 1, p. 21; see also Snyder Ex. 2 at NYC 0212). The City's Rule 30(b)(6) designee, Ryan Wanttaja, is "not aware of any other purpose behind the rule other than those listed in the statement basis and purpose." (Snyder Ex. 1, p. 22-23).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "8" of Plaintiff's Statement.[1]

9. Section 19-525 of the New York City Administrative Code authorizes the TLC to regulate exterior advertising on vehicles, but contains no provision related to interior advertising. (Snyder Ex. 1, p. 28; Ex. 6).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "9" of Plaintiff's Statement.

10. The City permits advertising inside taxis that operate with the TPEP system. (Snyder Ex. 1, p. 48).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "10" of Plaintiff's Statement.

11. Every taxicab in New York City has the TPEP system. (Snyder Ex. 1, p. 49).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "11" of Plaintiff's Statement.

12. The City permits advertising inside certain for-hire vehicles, specifically street hail liveries which have a passenger information monitor system installed. (Snyder Ex. 1, p. 37).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "12" of Plaintiff's Statement.

13. The City permits advertising in vehicles with the passenger information monitors "principally because of the or solely because they offset the cost of these mandatory pieces of equipment that provide the additional functionality that the TLC requires." (Snyder Ex. 1, p. 52).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "13" of Plaintiff's Statement.

---

[1] Defendant notes that the language quoted in this paragraph is from the deposition testimony of Ryan Wanttaja, Esq. (Exhibit 1 to the Declaration of Chad A. Snyder), and not the Statement of Basis and Purpose (Exhibit 2 to the Snyder Declaration).

14.     The City does not permit advertising inside any other for-hire vehicles. (Snyder Ex. 1, p. 38).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "14" of Plaintiff's Statement.

15.     The TLC does not have a process through which a for-hire vehicle driver or owner could apply for a license to display advertising inside a vehicle. (Snyder Ex. 1, p. 34).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "15" of Plaintiff's Statement.

16.     Vugo, Inc. is a Delaware corporation with its headquarters in Minneapolis, Minnesota. It was formed in early 2015. (Snyder Ex. 8, deposition of Vugo, Inc., p. 15).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "16" of Plaintiff's Statement.[2]

17.     Vugo operates a "software-only mobile media network" (Snyder Ex. 8, p. 15), that is in "the business of distributing media," including advertisements, entertainment content and public service announcements. (Snyder Ex. 8, p. 17).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "17" of Plaintiff's Statement.

18.     Vugo distributes the media to internet-connected tablets mounted in vehicles (Snyder Ex. 8, p, 20), primarily vehicles operated by drivers for rideshare services such as Uber and Lyft. (Snyder Ex. 8, p. 18-19).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "18" of Plaintiff's Statement.

19.     Vugo has partnered with rideshare drivers in dozens of cities across the country. Those cities include Los Angeles, San Diego, Minneapolis and San Francisco. (Bellefeuille Dec, ¶ 9).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "19" of Plaintiff's Statement.

20.     At present, most of the content on the Vugo platform is advertising and public service announcements. Vugo earns its revenue from advertisers who "pay us money to distribute their content though our platform." (Snyder Ex. 8, p. 21).

---

[2] Defendant notes that support for the assertion that Vugo, Inc. was formed in early 2015 is not found on page 15 of Exhibit 8 to the Snyder Declaration. There is, however, support for that proposition elsewhere in Exhibit 8.

**DEFENDANT'S RESPONSE:**  Defendant does not dispute the assertions in paragraph "20" of Plaintiff's Statement.

21. Companies wishing to advertise with Vugo can upload their content – "which in most cases is a video" – through the Vugo online portal. (Snyder Ex. 8, p. 24).

**DEFENDANT'S RESPONSE:**  Defendant does not dispute the assertions in paragraph "21" of Plaintiff's Statement.

22. Advertisers can have their ads appear nationwide, or they can select particular markets. (Snyder Ex. 8, p. 26).

**DEFENDAN'T RESPONSE:**  Defendant does not dispute the assertions in paragraph "22" of Plaintiff's Statement.

23. Before uploaded content is distributed over the Vugo network, it is reviewed by one of Vugo's three founders. (Snyder Ex. 8, p. 25). The review is conducted to ensure that content will "essentially follow broadcast standards. So, we are ensuring that there is no nudity, things of that nature being pumped through the channel." (Snyder Ex. 8, p. 24).

**DEFENDANT'S RESPONSE:**  Defendant does not dispute the assertions in paragraph "23" of Plaintiff's Statement.

24. Advertisers on the Vugo network include "everything from small mom and pop nail salons to billion dollar brands." (Snyder Ex. 8, p. 23).

**DEFENDANT'S RESPONSE:**  Defendant does not dispute the assertions in paragraph "24" of Plaintiff's Statement.

25. National advertisers that have used the Vugo platform include Express, DSW, Beepi, Mizzen & Main, and WeddingBands.com. (Snyder Ex. 8, p. 23, 135). Vugo also runs ads for itself on the platform. (Snyder Ex. 8, p. 17, 39).

**DEFENDANT'S RESPONSE:**  Defendant does not dispute the assertions in paragraph "25" of Plaintiff's Statement.

26. Vugo also runs public service announcements from the Ad Council. These are free ads that "communicate much needed valuable information to people." (Snyder Ex. 8, p. 22). Ads have included heart disease or blood pressure awareness and a campaign for the United Negro College Fund. (Snyder Ex. 8, p. 22).

**DEFENDANT'S RESPONSE:**  Defendant does not dispute the assertions in paragraph "26" of Plaintiff's Statement.

27. When passengers enter a vehicle whose driver has partnered with Vugo, they see a tablet mounted in some way so they can view and interact with it. About 75 percent of the screen displays the primary content – usually video – and the remaining 25 percent is allocated to static

displays related to the main content, the Vugo logo, and volume controls. (Snyder Ex. 8, p. 100, 108). It looks like this:



(Snyder Ex. 9)

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "27" of Plaintiff's Statement.

28.    At the beginning of a trip, the driver enters the destination into the Vugo app on his or her phone, and the display on the tablet automatically begins. (Snyder Ex. 8, p. 91).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "28" of Plaintiff's Statement.

29.    If passengers are interested in the displayed content, they will often have the ability to interact with it for further information. For example, a public service announcement regarding high blood pressure might include a clickable link to more information about "what are things I can do to prevent it, how can I change my diet to improve my health, do I need to see a doctor now, et cetera. The content displayed is really up to the advertiser or media owner." (Snyder Ex. 8, p. 46).

**DEFENDAN'TS RESPONSE:** Defendant does not dispute the assertions in paragraph "29" of Plaintiff's Statement.

30.    Passengers cannot turn off the display, but if they do not want to listen to the content they can use the on-screen controls to reduce the volume to a "near-mute" level that is low enough that they would need to be "actively attempting to hear it." (Snyder Ex. 8, p. 95-96, 99).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "30" of Plaintiff's Statement.

31. Vugo does not collect any personal information about the passengers. (Snyder Ex. 8, p. 104).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "31" of Plaintiff's Statement.

32. Advertisers pay Vugo for the display of their content during passenger trips. Vugo, in turn, splits the ad revenue with its driver partners: 60 percent to the driver, 40 percent to Vugo. (Snyder Ex. 8, p. 48).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "32" of Plaintiff's Statement.

33. In the spring of 2015, Vugo launched its open beta program, making its platform available to ride-share drivers across the country. (Snyder Ex. 8, p. 66).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "33" of Plaintiff's Statement.

34. During that beta period, a driver from New York City contacted Vugo and pointed out the TLC rules banning advertising inside for-hire vehicles. The driver "said he is very interested, but he wants to make sure that it's okay with the TLC." (Snyder Ex. 8, p. 63). That is how Vugo learned of the TLC rules. (Snyder Ex. 8, p. 63).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "34" of Plaintiff's Statement.

35. After learning of the TLC rules, Vugo's founder James Bellefeuille contacted the TLC to find out "how do we enter the [New York City] market because the rules did allude to it that there would be a authorization available." (Snyder Ex. 8, p. 64).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "35" of Plaintiff's Statement.

36. Bellefeuille exchanged a series of e-mails with TLC Assistant General Counsel Cheryl Eluto on July 30, 2015. (Snyder Ex. 8, p. 64-65, 67; Bellefeuille Ex. 2) Eluto wrote:

> I repeat, TLC has not authorized advertising on or in FHVs. The rules governing yellow taxis specifically authorize guidelines for advertising and rooftop units, as described in Chapter 67 of the rules. The TLC has not chosen to do so with other licensed vehicles.

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "36" of Plaintiff's Statement.

37. Eluto also wrote "TLC has not authorized such advertising, and has no immediate plans to do so. As you can see from the rule, there is a penalty associated with displaying unauthorized advertising." (Bellefeuille Ex. 2).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "37" of Plaintiff's Statement.

38. During the June 25, 1999 and August 5, 1999 public hearings on the TLC advertising rules, the TLC did not offer any rationale for restricting interior advertising in for-hire vehicles. The commissioners did not discuss interior advertising at all. (Snyder Ex. 2, 10).

**DEFENDANT'S RESPONSE:** Defendant disputes the assertions in paragraph "38" of Plaintiff's Statement to the extent they suggest or imply that 35 RCNY § 59A-29(e) and/or 35 RCNY § 59B-29(e) are unconstitutional. This dispute does not result in a genuine factual issue to be tried because Plaintiff's suggestion in this regard is not a factual assertion but legal argument.

39. The TLC has not made any effort to develop guidelines that would allow advertising in for-hire vehicles other than those with the passenger information monitors. (Snyder Ex. 1, p. 47).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "39" of Plaintiff's Statement.

40. TLC rules do not prohibit for-hire vehicle drivers from having non-advertising displays in their vehicles, such as photos of the driver's family or an iPad scrolling through photos of the driver's family – so long as the display is secured in a way that does not pose a safety hazard (Snyder Ex. 1, p. 65-66) and so long as the equipment is not displaying advertising (Snyder Ex. 1, p. 66-67).

**DEFENDANT'S RESPONSE:** Defendant disputes the assertions in paragraph "40" of Plaintiff's Statement because it mischaracterizes the testimony of Ryan Wanttaja. See Exhibit 1 to the Snyder Declaration at pages 64-67. This dispute, however, does not create a genuine issue of fact to be tried because the testimony speaks for itself. See id.

41. Vugo wants to operate in New York City because "when it comes to advertising, New York is the super bowl. It's the number one place where media planners live and work and make decisions for their campaigns and brands nationwide and so we viewed it as being considerably more valuable." (Snyder Ex. 8, p. 72).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "41" of Plaintiff's Statement.

42. At least 100 individual drivers of for-hire vehicles in New York City have expressed interest to Vugo in working with Vugo. (Snyder Ex. 8, p. 117).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "42" of Plaintiff's Statement.

43. Operators of fleets of cars in New York City have also expressed interest to Vugo in working with the company. The company has spoken with fleet operators who control about 1,000 vehicles in the city. (Snyder Ex. 8, p. 120). Several of the operators have signed letters of intent with Vugo, expressing their interest and good faith efforts to negotiate when permitted to

create a relationship where they will supply inventory for us. And we are able to advertise and distribute content within the City of New York." (Snyder Ex. 8, p. 121; Snyder Ex. 12).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "43" of Plaintiff's Statement.

44.   Vugo's Rule 30(b)(6) designee has spoken with between 20 and 25 fleet operators in New York City about partnering with Vugo, and most said they would partner with Vugo if it were permitted. (Snyder Ex. 8, p. 132).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "44" of Plaintiff's Statement.

45.   Advertisers have also told Vugo they want to advertise on the company's platform in New York City. Mizzen & Main and WeddingBands.com both told Vugo they would have liked to be able to run their campaigns in the City. (Snyder Ex. 8, p. 135). In addition a local New York City gym contacted Vugo about advertising. (Snyder Ex. 8, p. 136; Bellefeuille Dec. ¶ 12).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "45" of Plaintiff's Statement.

46.   CBS Television intends to provide content and advertising on the Vugo platform, but the agreement is "contingent on being able to advertise in New York City." (Snyder Ex. 8, p. 82-83).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "46" of Plaintiff's Statement.

47.   Vugo "had a lot of interest in this election year from political Super PACs and campaigns that want to advertise specifically in Brooklyn," but Vugo could not run the ads because of the TLC rules barring advertising in for-hire vehicles. (Snyder Ex. 8, p. 114-115).

**DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "47" of Plaintiff's Statement.

48.   Vugo has "a lot of interest" from ad agencies in New York, but is "waiting for our ability to advertise here." (Snyder Ex. 8, p. 84).

49.   **DEFENDANT'S RESPONSE:** Defendant does not dispute the assertions in paragraph "48" of Plaintiff's Statement.[3]

---

[3] Defendant notes that many of the assertions made in Plaintiff's Statement do not contain material facts. In particular, paragraphs "16" through "32" do not have the potential to affect the outcome of this case.

Dated:     New York, New York
             August 26, 2016

                          Respectfully submitted,

                          ZACHARY W. CARTER
                          Corporation Counsel
                            of the City of New York
                          Attorney for Defendant
                        , 100 Church Street, Room 5-171
                          New York, New York 10007
                          (212) 356-2215

                    By: *[signature: Nicholas Ciappetta]*
                          Nicholas R. Ciappetta (NC 1014)
                          Assistant Corporation Counsel